UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MERRILL LYNCH CAPITAL SERVICES, INC.,

              Plaintiff,

   - against -                    10 Civ. 5223 (DAB)
                                    MEMORANDUM & ORDER
PRAIRIE PRIDE, INC.,

              Defendant.
------------------------------------X
DEBORAH A. BATTS, United States District Judge.

    Plaintiff Merrill Lynch Capital Services, Inc. ("Merrill Lynch" or "Plaintiff") filed this action on July 8, 2010, alleging breach of contract arising out of two interest rate swap agreements between Merrill Lynch and Defendant Prairie Pride, Inc. ("Prairie Pride" or "Defendant"). Now before the Court is Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or in the alternative, for transfer of the case to the Western District of Missouri. For the reasons stated herein, Prairie Pride's Motion to Dismiss is DENIED, and its Motion to Transfer the Case to the Western District of Missouri is GRANTED.

I. BACKGROUND

    The following facts, taken from the Complaint, are assumed to be true for the purposes of this Motion to Dismiss.

An interest rate swap is a derivative financial instrument in which each party agree to pay either a fixed or a floating (variable) interest rate to the other party. (Compl., ¶ 7.) The most common interest rate swap involves one party agreeing to pay an amount based on a fixed interest rate in exchange for the other party agreeing to pay an amount based on a floating (variable) interest rate. (Id., ¶ 8.) This form of transaction is called a "plain vanilla interest rate swap." (Id.) Parties entering into interest rate swaps often utilize the standard form Master Agreement issued by the International Swaps Dealers Association, Inc. (The "ISDA Master Agreement"). The ISDA Master Agreement sets forth the general terms that govern the interest rate swaps, while the economic terms of a specific interest rate swap transaction are memorialized by a confirmation. (Id., ¶ 9.)

Prairie Pride and Merrill Lynch entered into two plain vanilla interest rate swap agreements, the terms of which are memorialized in two written confirmations (the "Confirmations"). (Compl., ¶ 10.) Each of the Confirmations states that the "Confirmation evidences a complete and binding agreement," refers to and incorporates the ISDA Master Agreement, and obligates Prairie Pride and Merrill Lynch "to use all reasonable efforts" to negotiate and execute an ISDA Master Agreement. (Id., ¶ 11.)

Nonetheless, no ISDA Master Agreement was executed by the parties. (Id., ¶ 11.)

Merrill Lynch contends that this Court has jurisdiction over Prairie Pride by virtue of consent and because Prairie Pride transacts business within the state of New York. (Compl., ¶ 5.) Furthermore, Merrill Lynch alleges that venue is proper because Merrill Lynch resides in the District and Prairie Pride has waived any objection to venue in the Southern District of New York. (Id., ¶ 6.)

## II. DISCUSSION

A. Motions to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of making a prima facie showing that jurisdiction exists. Best Van Line, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007). In deciding such a motion, "a district court has considerable procedural leeway," Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981) (citations omitted), and "may look to evidence outside the pleadings." Seaweed Inc. v. DMA Prod. & Design & Mktg. LLC, 219 F. Supp. 2d 551 (S.D.N.Y. 2002). The court may "determine the motion on the basis of affidavits alone

or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Id. Plaintiff ultimately bears the burden of establishing personal jurisdiction by a preponderance of the evidence, either at an evidentiary hearing or at trial. A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79 (2d Cir. 1993). "But where the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." Id. Conclusory allegations lacking factual specificity, however, do not satisfy plaintiff's burden. Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184-88 (2d Cir. 1998).

"A court must have a statutory basis for asserting jurisdiction over a defendant . . . and the Due Process Clause typically also demands that the defendant, if not present within the territory of the forum . . . have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Frontera Res. Azer. v. State Oil, 582 F.3d 393, 397 (2d Cir. 2009).

B.  Forum Selection Clause

The Second Circuit has stated that where a party seeks to challenge a forum selection clause, the district court must analyze: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive; (3) whether the claims and parties involved in the suit are subject to the forum selection clause; and (4) whether the resisting party has made a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Phillips v. Audio Active, Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007)

Here, enforcement of the forum selection clause would be inappropriate because the parties to the suit are not subject to the clause, which was contained in an agreement they never executed, (Compl., ¶ 11), and whose terms were not revealed to Defendant until after the Confirmations had been signed (Wilson Aff., ¶ 2).

Merrill Lynch argues that the unexecuted agreement is nonetheless binding. First, they argue that Mr. Swearingen, a member of the Board of Directors of Prairie Pride (See Swearingen Aff., ¶ 1), manifested Prairie Pride's intent to be bound by

5

substantially all of the provisions of the ISDA Master Agreement in an email dated March 1, 2007, which reads:

> I have been contacted a couple of times about signing some document to confirm our swap agreement. . . . John Nelson has forwarded me documents titled ISDA Master Agreement and ISDA Credit Support Annex. It is my understanding that our attorney, Stan Duran, has approved signing this except Section 8(d) of the Master Agreement. However, the forms I have are only electronic forms that have not been dated or signed by M-L. Can you please summarize where we are on our interest rate swap agreement? I thought we had this squared away last year. I am sure that we signed the PPI swap Confirm.doc and faxed it to you. What documents do we yet need to execute?
>
> (Wilson August 26 Aff., Ex. B.)

Plaintiff, citing the Second Circuit's decision in <u>Vacold LLC v. Cerami</u>, 545 F.3d 114, 124 (2d Cir. 2008), argues that a binding agreement existed under New York law, since the parties left nothing further for negotiation. (Def.'s Mem. L., at 7.) Mr. Swearingen's email, however, makes clear that the parties had left at least one issue for further negotiation, namely, Section 8(d) of the ISDA Master Agreement. Merrill Lynch concedes as much, but dismisses the provision as one "not implicated in this lawsuit." (Def.'s Mem. L., at 7.)

Whether or not the provisions of a contract still under negotiation are "at issue" is, of course, irrelevant. The Second Circuit made clear in <u>Vacold LLC</u> that where parties anticipate

6

signing an agreement, but have left some terms open for further negotiation, the contract does not "commit the parties to their ultimate contractual objective," but rather operates as an agreement to "negotiate the open issues in good faith." Vacold LLC, 545 F.3d at 124, quoting Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d 543, 547 (2d Cir. 1998). This Court, therefore, cannot find that the parties were bound by the ISDA Master Agreement on the basis of Mr. Swearingen's March 1, 2007 email.

Nor can this Court find that Prairie Pride manifested its intent to be bound by the ISDA Master Agreement through performance under the swap agreements from December 2007 to February 2009. (See Def.'s Mem. L., at 6.) Each of the Confirmations recites that it "evidences a complete and binding agreement." (Compl., ¶ 11.) That "complete and binding agreement" obligated the parties to "use all reasonable efforts" to execute the ISDA Master Agreement. (Id.) This Court cannot conclude that performance under the Confirmations, which themselves represented "complete and binding" agreements, constituted performance under the ISDA Master Agreement, which was never signed.

7

When confronted with nearly identical facts, another court in this District reached the same result. In <u>Bank of America, N.A. v. Hensley Properties, LP</u>, 495 F. Sup. 2d 435 (S.D.N.Y. 2007), the court declined to enforce a forum selection clause contained in the ISDA Master Agreement, when the parties had signed only a confirmation that included no forum selection clause. <u>Id.</u> at 438-39. Like the defendant in that case, Prairie Pride was not provided with a copy of the ISDA Master Agreement until after the Confirmations were executed. This Court agrees that enforcement of the forum selection clause in the unexecuted ISDA Master Agreement is not appropriate.

C. Contacts with New York

Prairie Pride contends that in the absence of a forum selection clause, this Court lacks personal jurisdiction over it. (Pl.'s Mem. L., at 9.) Merrill Lynch contends that this Court has jurisdiction over Prairie Pride under New York's long-arm statute, CPLR § 302(a)(1), which provides for jurisdiction over non-domiciliaries that "transact[ ] any business within the state."

When determining whether a party transacts business within New York, courts look at the "totality of the circumstances," and consider: "(1) whether the defendant has an ongoing contractual

8

relationship with a New York corporation; (2) whether the contract was negotiated or executed in New York; (3) whether the contract contains a New York choice-of-law, forum-selection or consent to jurisdiction clause; and (4) whether the contract requires notices or payments to be sent to New York or requires supervision by the corporation in New York." ESI, Inc. v. Coastal Corp., 61 F. Supp. 2d 35, 57 (S.D.N.Y. 1999) (citing Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)).

Merrill Lynch contends that Prairie Pride has transacted business in New York because Prairie Pride (1) entered into the Confirmations with Merrill Lynch, a New York entity, (2) performed under the Confirmations for more than one year, (Wilson July 1 Aff., Exs. B, C, ¶ 3), and (3) paid money owed under the Confirmations by wiring money to Merrill Lynch's New York bank account (Wilson Aug. 26 Aff. ¶ 4). Furthermore, Prairie Pride was in contact with Merrill Lynch employees located in New York while negotiating the Confirmations and after the Confirmations were executed. (Wilson Aug. 26 Aff., ¶ 2; Wilson July 1 Aff., Exs B, C.)

Given Prairie Pride's ongoing contractual relationship with a New York entity, under which they communicated with Merrill

9

Lynch employees in New York and wired payments to New York, this Court finds that Prairie Pride transacted business in New York within the meaning of CPLR § 302(a)(1). See Agency Rent A Car Sys., 98 F.3d at 30; see also Trabucco v. Intesa Sanpaolo, S.p.A., 695 F. Supp. 2d 98, 104 (S.D.N.Y. 2010).

Additionally, to satisfy the Due Process Clause of the United States Constitution, the exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Here, personal jurisdiction comports with constitutional due process requirements because Prairie Pride's involvement with Merrill Lynch in New York was not "random," "fortuitous" or "attenuated." See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 480 (1985). Rather, Prairie Pride sought to obtain "the manifold benefits that would derive from affiliation with a nationwide organization," Id. at 479-80, and has therefore "purposefully availed" itself of the privilege of doing business in New York. Under the circumstances, it should have reasonably foreseen being haled into court in New York. See Id. at 474.

D.  Transfer

Prairie Pride moves, in the alternative, to transfer this case to the Western District of Missouri pursuant to 28 U.S.C. § 1406(a) because venue is improper in the Southern District of New York.

Where, as here, jurisdiction is founded only on diversity of citizenship, a civil action may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

As an initial matter, Merrill Lynch claims that Prairie Pride has waived any challenge to venue in the Southern District of New York under Section 13(b)(ii) of the ISDA Master Agreement. (Pl.'s Mem. L., at 12.)  As this Court has already found, the ISDA Master Agreement was not a binding agreement since it had not been signed and at least one issue remained open for negotiation.  Accordingly, Prairie Pride did not waive its right to challenge venue in the Southern District of New York.

11

Here, the Defendant resides in the Western District of Missouri. Furthermore, "the Swap Confirmations at issue were executed by Prairie Pride in Deerfield, Missouri. . . . The negotiations over the Swap Confirmations took place in Missouri. The majority of the relevant witnesses, documents, and sources of proof are located in or near the biodiesel facility in Missouri." (Swearingen Aff. ¶ 11.)

Because Prairie Pride resides in the Western District of Missouri, and "a substantial part of the events" giving rise to Merrill Lynch's claim arose in Missouri, there is at least one other jurisdiction in which this action could have been brought. Venue is therefore improper in the Southern District of New York under 28 U.S.C. § 1391(a). Prairie Pride's Motion to Transfer for improper venue must be granted.

### III.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for lack of personal jurisdiction is DENIED and Defendant's Motion to Transfer the Case to the Western District of Missouri is GRANTED. The Clerk of Court is directed to TRANSFER this case

to the Western District of Missouri and CLOSE the docket in this case.

SO ORDERED.

Dated:     New York, New York
           March 10, 2011

_Deborah A. Batts_
Deborah A. Batts
United States District Judge